TAYLOR v. MARSHALL.

(Circuit Court, D. Massachusetts. March 15, 1904.)

No. 1,062.

1. PATENTS—INFRINGEMENT—MACHINES FOR FELTING HAT GOODS.

The Taylor patents, Nos. 263,075, 263,076, 280,095, 297,471, 302,055, and 393,866, for improvements in machines for felting hat goods, if valid, must be limited to the specific form of devices described. As so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent Nos. 263,075, 263,076, 280,095, 297,471, 302,055, and 393,866—all for machines for felting hat goods—granted to James S. Taylor, respectively, on August 22, 1882, August 22, 1882, June 26, 1883, April 22, 1884, July 15, 1884, and December 4, 1888. On final hearing.

Aaron T. Bates, for complainant.

Friend W. Smith, Jr., and David F. Slade, for defendant.

COLT, Circuit Judge. The complainant, who is the patentee, brings suit for infringement of 6 patents, with 39 distinct claims, for improvements in an old type of machine for felting a roll of hats. This type may be generally described as consisting of two lower rollers journaled in fixed bearings in the same horizontal plane; an upper roller journaled in and carried by a pivoted or swinging frame; a counterbalancing, adjustable weight attached to the rear part of the frame, whereby the upper roller exerts a greater or less pressure on the roll of hats; and a treadle secured to the front part of the frame for raising the top roller to make an opening for the hats. Projections or a spirally wound rope were commonly used on the surfaces of the rollers. The prior art exhibits numerous varieties of this general type of machine.

The rollers are the fundamental and essential thing in a hat-felting machine. At the time of the earliest Taylor patent in suit, there was little room for invention in the connecting mechanism, for raising the top roller to make an opening for the hats, or in the weights, springs, or levers employed in combination with the swinging frame to regulate the pressure of the top roller upon the hats during the operation of felting. On the other hand, the field of invention was open to new and useful improvements in the organization, movement, and form of the rollers, whereby the efficiency of the felting operation might be increased. It was to this primary feature that the Taylor patents in suit were mainly directed. All of them, except the last, are for new and specific arrangements of rollers. The connecting mechanisms in these machines are of a subordinate and auxiliary character, and can

scarcely be held, in the light of the pre-existing art, to have involved any invention. It may further be observed that no one of these specific arrangements of rollers, which constitute the chief feature of five of these patents, has ever, so far as appears, gone into practical use, or made any impression on the art. The most that can be said with respect to the utility of these inventions is that some of the specific forms of connecting mechanism in which they are embodied have found their way into a commercial machine.

The complainant sells or licenses a hat-felting machine called the "Taylor Machine," and the defendant admits that he uses in his mill a number of machines of substantially the same construction; but the difficulty is that the Taylor machine, in its main features, is unlike any of the machines described in the Taylor patents for the infringement of which the present suit is brought. The Taylor machine closely resembles in structure and organization the machines of the prior art. Its only resemblance to the patented machines consists in the use of connecting mechanism which is made the subject of several of the claims of these patents. These claims, upon a broad construction, are void for want of patentable novelty, and, if valid at all, must be limited to the specific form of devices described.

The Taylor machine is composed of two lower rollers journaled in fixed bearings in the same horizontal plane; a top roller journaled in and carried by a swinging yoke or frame, a coil spring attached to the rear end of the yoke, and secured to the main frame of the machine; a hand lever pivoted to the frame of the machine, and connected with the forward end of the yoke by a spiral spring; projections in the form of lags on the surfaces of the rear and top rollers; and a spirally wound rope on the surface of the front roller. These elements, or their equivalents, were old in the art, and, if the complainant had obtained a patent for a machine embodying them in combination, its validity, with little doubt, could have been successfully attacked on the ground of want of patentable novelty or invention.

A reference to the machines of the Taylor patents will show how little they resemble the Taylor commercial machine. In the first of these patents, No. 263,075, dated August 22, 1882, the patentee says:

".The object of the invention is to increase the efficiency of this class of machines, and the process involved in their use, especially by adapting the machine to give the necessary fulling or wringing and fulling motion to the goods while in process of manipulation."

This is accomplished in the first form of the machine described by an organization composed of a relatively small work roller, or "idler, c," and two other rollers. The work roller is without gearing, and "is revolved by the traction of the roll of goods." It is depressed by means of a handle and connecting spring, which is attached to the frame. In operation, the forward motion of the under large roller carries the roll of goods under the work roller, which is raised by the upward pressure of the goods; "the gravity of the goods keeping them from being drawn between the rollers." The action of the machine "differs from that of other machines in which the roller corresponding with the worker, c, instead of being revolved by the goods, acts to revolve them." "In my machine the goods both raise the worker and

cause it to revolve." The specification then describes a modification of the invention, in which an additional cam roller is mounted on the frame. This cam roller is given a movement the reverse of the other rollers, so that when in motion it exerts a retarding effect on the roll of goods. Another modification of the machine is where two of the three rollers are elliptical in form, whereby certain new and advantageous movements are imparted to the rollers. It is manifest that neither the Taylor machine nor the defendant's machine embodies the inventions described and claimed in this patent.

In the second of these Taylor patents, No. 263,076, dated August 22, 1882, the patentee says: "The object of my invention is to facilitate the process of felting hat goods, and other fabrics." Here we find an organization of rollers in the form of a transverse curve. This arrangement makes an opening or chamber between the top rollers for receiving and discharging the goods. The front roller in this machine has a vibratory motion communicated through connecting rods and crank wheels. Upon the surface of the roller are "adjustable knuckles." The specification says:

"While the goods remain therein, the continuous vibrating motion of the knuckled roller, 'R', in connection with the revolving motion of the three rollers in the direction indicated by the arrows, imparts to the goods a rolling and vibrating movement, while they are at the same time exposed to the heating and cooling action of water and air."

It is apparent that the special features which comprise the invention covered by this patent are not found in the Taylor machine or in the defendant's machine.

In the third of this series of Taylor patents, No. 280,095, dated June 26, 1883, the patentee says:

"This invention relates to a machine specially intended for wool-hat felting, but applicable also to the felting of other fabrics. It consists in the arrangement of the rollers forming the open receiving-chamber, whereby the goods may be freely entered and removed without the use of a treadle or other appliance for opening the chamber, and whereby, further, an elastic or yielding pressure may be exerted upon the goods during the felting operation and the pressure made constant or increased at pleasure, as hereinafter particularly described."

We have in this patent an organization of three rollers—two in fixed bearings in the frame, and the third mounted on a pivoted yoke or frame. The latter or top roller is so balanced by springs attached to the frame as to have a slight tendency to fall forward. The tension of these springs may be varied by adjusting their lower ends to holes in the frame. In the operation of the machine, the front roller, through the adjustment of the springs—

"Slightly rises to admit the roll of goods, and then bears upon them with a degree of force proportioned to the weight or tendency of the roller to fall, and the resistance of the springs. The pressure exerted by the roller, B″, is consequently elastic or yielding. Should it be desired to make the pressure constant, this may be done by forcing the roller, B″, down and holding it in depressed condition by means of the treadle, d′. The elastic pressure of the roller may also be increased by the same means, or by the use of the treadle conjointly with a special adjustment of the springs, b″, to the holes, b⁴. The intention is to so adjust or balance the roller, B″, that it shall automatically open or widen the chamber sufficiently for the convenient removal of the goods during and after the completion of the felting process."

The specific organization of rollers set forth in this patent is absent from the Taylor machine and from the defendant's machine. There is notably lacking the feature of the automatic enlargement of the chamber to receive the goods, which is made an element of all the claims except the last, wherein reference is made to a distinctive arrangement of "concave rollers."

In the fourth of this series of Taylor patents, No. 297,471, dated April 22, 1884, we find an arrangement of three rollers in a transverse curve, "such that they form a U-shaped opening or chamber, with its opening above for receiving and manipulating the goods." There is no roller over or before the opening, "so that the roll of goods manipulated in the machine is at all times under the supervision of the operator." To the front roller is attached a compound lever or toggle joint, which is connected with a foot lever. Downward pressure of the foot on the lever causes the compression of the goods through the medium of the front roller, and a light or heavy pressure may be exerted "through the action of the toggle joint." The front roller is so pivoted as to fall or swing by its own gravity away from the open chamber, by which means the goods can be readily removed from the machine. No such organization is present in the Taylor machine or in the defendant's machine.

In the fifth of this series of Taylor patents, No. 302,055, dated July 15, 1884, the patentee says:

"The object of my present invention is to render the machine during its operation more easily controlled by the operator, and to secure a more uniform felting action on the roll of felting material while in the working-chamber of the machine. To this end the invention consists, first, in means for adjusting one roller out of line with the other two, so as to cause more or less longitudinal motion to the roll of felting material at different points of the felting-chamber; second, in providing the rolls with certain new surface irregularities, hereinafter specified and claimed, so as to secure a better action upon the roll or bundle of felting material than has heretofore been accomplished; third, in adjusting the small worker or third co-operating felting-roller so that its action on the material during the operation of the machine will be more easily under the control of the operator; fourth, in certain details of construction and organization, hereinafter described in the specification, and pointed out in the claims."

This statement of the invention indicates how far it is removed from the Taylor machine. Upon the frame of this machine are mounted the two main rollers, one "being placed partially above and back" of the other, "with a suitable large space between them." Supported on the axis of the back roller is a pivoted yoke, and swinging on the bearings of the arms of this yoke is a supplementary frame carrying a very small additional roller, "or worker, c." This work roller is held elastically against the roll of goods by springs which connect the supplemental frame with the yoke. A weight upon the rear arm of the yoke is used as a "counterpoise" to the supplemental work roller "to cause it to exert less than its weight on the material." This weight is "counterbalanced" by the power applied to the lever in the front of the machine. The yoke is provided with arms extending forward, and connected with a hand lever by springs. This lever is pivoted to the frame of the machine. It has upon its surface a pin, which may be inserted in a series of holes upon an upright secured to the frame of

the machine. The required degree of pressure is effected through the lever by inserting the pin in a lower or higher hole in the upright. The yoke supporting the "idler or supplemental roller" is balanced or centered at a point on the line of the center of the back roller for the purpose of keeping the work roller and the back roller at equal distances apart. There are also means provided for adjusting the back roller so that it will be out of line with the other rollers. Upon the surface of the large front roller are secured lags, while around the surfaces of the other rollers rope is wound. Without entering more fully into the specification of the patent, it is apparent that this organization of rollers, frames, and springs is not found in the Taylor machine or in the defendant's machine.

With respect to the claims of this patent which are relied upon, it may be said that the fifth claim must be limited to the specific arrangement of rollers and vertical and lateral springs described in the specification; that the sixth claim must be limited to the hand lever and projecting pin when combined with the balanced yoke and supplemental roller described, or else it is void for want of patentable novelty; and that the seventh claim must also be so limited, or else it is void for the same reason.

The sixth of this series of Taylor patents, No. 393,866, dated December 4, 1888, is for the combination of two rollers with longitudinal projections, and a third roller with annular projections in the form of a specially wound rope. Unless this patent be limited to the longitudinal projections referred to in the specification and shown in the drawings, it is void for lack of novelty or invention. Neither the Taylor machine nor the defendant's machine use this form of projections.

The complainant's evidence in this case is vague, uncertain, and very unsatisfactory. It is largely made up of general statements and broad assertions. It is entirely wanting in any critical analysis of the Taylor patents, the Taylor machine, or the prior art. This has thrown an unusual burden upon the court, although the defendant's proofs and the carefully prepared brief of his counsel have been of much aid.

Upon full consideration, I find the defendant is not guilty of infringement in using machines like the Taylor machine, since that machine does not embody any of the inventions covered by the patents in suit. A decree may be drawn dismissing the bill, with costs. Bill dismissed.